**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**


**ANGELA TATE, DARSHAUN YOUNG,**                              **PLAINTIFFS**
**DENA MYERS, and HOPE LANDING**


**v.**                              **CIVIL ACTION NO. 2:19-cv-63-TBM-RHWR**


**DR. MICHAEL ZALESKI and**
**TOTAL FOOT CARE, LLC**                              **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

From January 10, 2022, through January 14, 2022, this case was tried to a jury. Following the conclusion of Defendants' case-in-chief, the Court denied in part and granted in part Defendants' Motion for Judgment as a Matter of Law. The Plaintiffs' sexual harassment and hostile work environment claims were submitted to the jury.  The jury returned a verdict awarding damages in the amount of $24,000 to Plaintiff Dena Myers, $34,000 to Plaintiff Darshaun Young, and $18,000 to Plaintiff Angela Tate, and finding in favor of Defendant Total Foot Care, LLC, on the claims of Plaintiff Hope Landing.[1] The Court entered a Final Judgment [306] consistent with the jury's verdict. On January 17, 2022, Defendants filed a Motion [303] for Judgment Notwithstanding the Verdict, or in the alternative, Motion to Alter or Amend the Judgment, or in the alternative, a Motion for a New Trial.

---

[1] Dr. Michel Zaleski was dismissed at trial, as an individual Defendant, as the Court granted Defendants' Rule 50 motion to dismiss Plaintiffs' state law claims of intentional infliction of emotional distress.

Defendants' Motion [303] is denied for several reasons. First, while a plaintiff ordinarily must establish the requisite number of employees as a statutory element of a Title VII claim, Defendants waived this issue by failing to raise it until the close of Plaintiffs' case. In fact, Defendants did not raise the issue as a "contested issue" of law or fact in the joint pretrial order submitted by the parties. Next, since the Court finds that the convenience and economy of trying the four Plaintiffs' claims together outweighed any potential prejudice to the Defendants, the claims were properly joined and not severed.  Finally, Defendants assert that a mistrial is warranted because Plaintiffs' counsel's opening statement was out of bounds. The Court's limiting instructions to the jurors with regard to Dr. Zaleski's medical licensing status along with the preliminary jury instructions minimized any potential prejudice to Dr. Zaleski from this statement. And the Court's warning during opening statements to Plaintiffs' counsel to stay within the confines of what the evidence would show, in response to her singular comment about "other women" calling her, along with multiple instructions that arguments of counsel are not evidence, rendered any potential prejudice from this statement harmless. Defendants' motion for mistrial is denied.

## I.      STANDARD OF REVIEW

The Court will set out the standards of review for the three motions named in the caption. However, two of these motions—the Motion to Alter or Amend the Judgment and the Motion for New Trial—were not analyzed in Defendants' briefs.

### a.   Motion for Judgment as a Matter of Law

Defendants have moved for a judgment notwithstanding the verdict which is a motion for

judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure.[2]  In determining

whether to grant a motion for judgment as a matter of law, the Court must only grant the motion

when:

> [T]he facts and inferences point so strongly and overwhelmingly in favor of the
> moving party that reasonable jurors could not arrive at a contrary verdict, viewing
> the facts in the light most favorable to the party against whom the motion is made,
> and giving that party the advantage of every fair and reasonable inference which the
> evidence justifies.

*Spuler v. Pickar*, 958 F.2d 103, 105 (5th Cir. 1992) (citing *Harwood & Assoc., Inc. v. Tex. Bank and

Tr.*, 654 F.2d 1073, 1076 (5th Cir. 1981)). Further, the Court must consider all of the evidence

contained in the record. *Reeves*, 530 U.S. at 150.

> In doing so, however, the court must draw all reasonable inferences in favor of the
> nonmoving party, and it may not make credibility determinations or weigh the
> evidence. Credibility determinations, the weighing of the evidence, and the drawing
> of legitimate inferences from the facts are jury functions, not those of a judge.

*Id.* at 150-51 (citations omitted).

### b.   Motion for a New Trial

In the alternative, Defendants move for a new trial, pursuant to FED. R. CIV. P. 59(a). "A

new trial will not be granted based on trial error unless, after considering the record as a whole, the

court concludes that manifest injustice will result from letting the verdict stand." *Foradori v.

Harris*, 523 F.3d 477, 506 (5th Cir. 2008). "Courts do not grant new trials unless it is reasonably

---

[2] Pursuant to the 1991 Amendment to FED. R. CIV. P. 50, a Motion for Directed Verdict and a Motion for
Judgment Notwithstanding the Verdict are referred to as a Motion for Judgment as a Matter of Law. FED. R. CIV. P.
50 advisory committee's notes to 1991 amendment. *See Guidestone Ins. Co. v. Bridges*, 2:06-cv-229-KS-MTP, 2009 WL
691978, *1, n.1 (S.D. Miss. Mar. 13, 2009).

clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Jones v. Ruiz*, 478 F. App'x 834, 835-36 (5th Cir. 2012) (internal quotation marks and citation omitted). Although Rule 59(a) does not enumerate grounds for a new trial, a district court may grant a new trial if the court finds that the verdict is against the weight of the evidence, the damages awarded are excessive or inadequate, the trial was unfair, or prejudicial error was committed in its course. *See Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). And, when a new trial is based on evidentiary grounds, the court should not grant a new trial, unless the "verdict is against the great weight of the evidence." *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998).

### c. Motion to Alter or Amend Judgment

Defendants make an alternative request for relief—that the Court alter or amend the Judgment—pursuant to FED. R. CIV. P. 59(e). "A Rule 59(e) motion calls into question the correctness of a judgment." *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (quoting *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). There are three grounds for altering a judgment under Rule 59(e): "(1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice." *Wiemer v. Rubino*, 1:16-cv-99-LG-RHW, 2019 WL 2453662, *2 (S.D. Miss. June 12, 2019) (quoting *Williamson Pounders Architects, P.C. v. Tunica Cty.,* 681 F. Supp. 2d 766, 767 (N.D. Miss. 2008)).

Rule 59(e) motions are "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment," *Templet*, 367 F.3d at 479. They also "should not be used to . . . re-urge matters that have already been advanced by a

party." *Nationalist Movement v. Town of Jena*, 321 F. App'x 359, 364 (5th Cir. 2009). It is "an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479. Before filing a rule 59(e) motion, a party "should evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement" with the Court. *Atkins v. Marathon LeTourneau Co.*, 130 F.R.D. 625, 626 (S.D. Miss. 1990).

## II.    MOTION FOR JUDGMENT AS A MATTER OF LAW

### a.   Numerosity Argument

Defendants first contend that they are entitled to judgment as a matter of law because Plaintiffs allegedly failed to establish an essential element of their claim—that Total Foot Care had fifteen or more employees for each working day for twenty weeks. [303] at 2. Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has *fifteen or more employees* for each working day *in each of twenty or more calendar weeks* in the current or preceding year." 42 U.S.C. § 2000e(b) (emphasis added).

The Supreme Court has interpreted this as a statutory element of a Title VII claim. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006). Thus, it is true that a plaintiff must show that the defendant has fifteen or more employees for twenty or more calendar weeks as part of its burden to prove a Title VII claim. In light of the standards that govern Rule 50 motions, there was sufficient evidence at trial—at least in the light most favorable to the Plaintiffs and giving every reasonable inference to the Plaintiffs—that Total Foot Care had fifteen or more employees. The Court referred to Exhibit D-4 during its ruling from the bench on Defendants' Rule 50 motion. The Court noted that Exhibit D-4 is a photograph depicting twenty people who were confirmed by witnesses to be employees at Total Foot Care—including all four Plaintiffs. The

Court also pointed to EEOC complaints in the record (Exhibits D-20, PT-3, and PY-3) which all state that there were twenty-five employees at Total Foot Care.

Regardless, since the numerosity requirement (including how long the minimum number of employees worked) is not a jurisdictional requirement, it can be waived if not contested early enough. *See Fort Bend Cty., Tex. v. Davis*, 139 S. Ct. 1843, 1849-50, 204 L. Ed. 2d 116 (2019) (including Title VII's numerosity requirement in a list of non-jurisdictional issues that may be forfeited if not raised in time); *Thomas v. Ala. Home Const.*, 271 F. App'x 865, 867-68 (11th Cir. 2008) (finding the defendant waived the numerosity requirement when it failed to raise the issue "in its answer, at the close of the plaintiffs' case-in-chief, or at any other time during the trial"); *Thomas v. Imperial Cleaning Sys., Inc.*, No. 3:18-cv-00772, 2019 WL 3210101, at *4 n.4 (M.D. Tenn. June 20, 2019), *report and recommendation adopted*, No. 3:18-cv-00772, 2019 WL 3202999 (M.D. Tenn. July 16, 2019) ("[B]ecause the employee numerosity requirement is a nonjurisdictional element of [the plaintiff's] claim, it is subject to waiver.").

In *Fort Bend*, the employer moved to dismiss the employee's discrimination claim after the case was remanded back to the district court. *Fort Bend*, 139 S. Ct. at 1848. After years of litigation, Fort Bend asserted, for the first time, that the court lacked jurisdiction because the plaintiff had not stated a religion-based discrimination claim in her EEOC charge. *Id*. The Supreme Court affirmed the Fifth Circuit's holding that since Title VII's charge-filing requirement is not jurisdictional, it is subject to waiver if a party waits too long to raise it. *Id*. at 1848, 1852. Noting the distinction between jurisdictional prescriptions and nonjurisdictional claim-processing rules, the Court stated that "[a] claim-processing rule may be 'mandatory' in the sense that a court must enforce the rule if a party 'properly raise[s]' it." *Id*. at 1849 (quoting *Eberhart v. United States*, 546

U.S. 12, 19, 126 S.Ct. 403, 163 L.Ed.2d 14 (2005) (*per curiam*)). The Court cautioned, however, that "an objection based on a mandatory claim-processing rule may be forfeited 'if the party asserting the rule waits too long to raise the point.'" *Id.* (quoting *Kontrick v. Ryan*, 540 U.S. 443, 445, 124 S. Ct. 906, 157 L. Ed. 2d 867 (2004)). The Court stated that it "has characterized as nonjurisdictional an array of mandatory claim-processing rules and other preconditions to relief" including "Title VII's limitation of covered 'employer[s]' to those with 15 or more employees." *Id.* (quoting *Arbaugh*, 546 U.S. at 503-04). *See Union Pacific R. Co. v. Brotherhood of Locomotive Eng'r and Trainmen*, 558 U.S. 67, 82, 130 S. Ct. 584, 175 L. Ed. 2d 428 (2009) (stating "we have also held nonjurisdictional and forfeitable the Title VII provision exempting employers who engage fewer than 15 employees").

Also, if a party fails to raise an issue in the pretrial order, then the issue can be waived. For instance, the Advisory Committee notes to Rule 16 state as follows:

> Counsel bear a substantial responsibility for assisting the court in identifying the factual issues worthy of trial. If counsel fail to identify an issue for the court, the right to have the issue tried is waived.

FED. R. CIV. P. 16 advisory committee's notes to 1983 amendment. Additionally, the Fifth Circuit has found that parties waive issues and claims not mentioned in the final pretrial order. "Once the [pretrial] order is entered, it controls the scope and course of the trial. If a claim or issue is omitted from the order, it is waived." *Swift v. State Farm Mut. Auto. Ins. Co.*, 796 F.2d 120, 123 (5th Cir. 1986) (quoting *Flannery v. Carroll*, 676 F.2d 126, 129 (5th Cir. 1982)) (holding that the district court did not abuse its discretion in determining the defendant stipulated to fact that the driver was an uninsured or underinsured motorist where the pretrial order "failed to list Stoltz's UM status as either a contested issue of fact or a contested issue of law" and the defendant stipulated that

7

"COVERAGE UNDER THE POLICY IS NOT CONTESTED; LIABILITY IS CONTESTED.").

"The claims, issues, and evidence are narrowed by the pretrial order, thereby narrowing the trial to expedite the proceeding." *Elvis Presley Enter., Inc. v. Capece*, 141 F.3d 188, 206 (5th Cir. 1998) (finding that Plaintiff waived claims for an accounting of profits and attorney's fees since they were not raised in the pretrial order). *See also Cadle Co. v. Pratt,* No. Civ. A. 3:03-CV-0932-L, 2004 WL 718977 (N.D. Tex. Mar. 31, 2004), *aff'd sub nom. In re Pratt*, 411 F.3d 561 (5th Cir. 2005) (affirming bankruptcy court's decision not to allow a plaintiff to develop evidence of a debtor's interest in a certain property because the plaintiff waived that issue by failing to include it in the pretrial order).

Here, the first page of the pretrial order states that "the pleadings are amended to conform to this pretrial order," effectively narrowing the issues for trial as to those contained in the order. [289] at 1. Likewise, the joint pretrial order required the parties to list the "contested issues of fact" and the "contested issues of law." [289] at 2-3. Total Foot Care did not identify the numerosity issue in either section of the pretrial order. *Id.*

Further, "*[e]ven a prima facie element of the plaintiff's case* may be removed from dispute" by not including the issue in the pretrial order. *Smith v. Wash. Sheraton Corp.,* 135 F.3d 779, 784 (D.C. Cir. 1998) (emphasis added). There, a plaintiff had to prove the defendant owned the property as a part of his premises liability case. *Id*. But the court held that because the defendant did not "raise lack of ownership or control as a defense in the face of the plaintiff's pretrial statement clearly asserting the contrary," the defendant waived this defense. *Id.* The plaintiff "was entitled to rely on the parties' pretrial statements and the pretrial order to inform her of 'precisely

what [was] in controversy." " *Id.* (quoting *Erff v. MarkHon Indus., Inc.,* 781 F.2d 613, 617 (7th Cir. 1986)). *See also Cajun Servs. Unlimited, LLC v. Benton Energy Serv. Co.*, Civ. Act. No. 17-0491, 2020 WL 3188991, at *19 (E.D. La. June 15, 2020), *aff'd*, 855 F. App'x 771 (Fed. Cir. 2021) (finding that defendant's "failure to include prosecution history estoppel in the contested issues of law in the pretrial order, compounded with its failure to object to the jury instructions on the doctrine of equivalents on this basis, and its failure to raise the issue at any other point during trial, including in its Rule 50(a) motions, undoubtedly resulted in waiver").

The law is clear that since numerosity is not a jurisdictional requirement, it can be waived if not contested early enough. This case is similar to the employer in *Fort Bend* who waited several years to object to the employee's EEOC charge. Here, the parties engaged in three years of litigation, extensive and costly trial preparations, and four full days of trial before the issue was first raised. Defendants did not raise this issue in a motion to dismiss or a motion for summary judgment, in a proposed jury instruction, or in the joint pretrial order that was agreed to and signed by the parties.

Defendants argue that the Court's ruling on the "number of employees" issue is the equivalent of holding that all facts that are not listed in the "contested issues of fact" section of the pretrial order are deemed to be stipulations by the parties. [303] at 5. Defendants do not mention that Section 9(c) of the pretrial order also lists "contested issues of law." [289] at 3. Defendants did not raise this issue in either place. A stipulation can be agreed to by the parties and presented to the jury for the jury's consideration. *Stipulation*, Black's Law Dictionary (11th ed. 2019) ("A voluntary agreement between opposing parties concerning some relevant point; esp., an agreement relating to a proceeding, made by attorneys representing adverse parties to the

proceeding"). At trial, there were stipulations that were ultimately presented to the jury for the jury's consideration. The numerosity issue was not a stipulation, as it was never an issue for consideration by the jury because it was effectively uncontested. The pretrial order—which enumerates the "contested" issues of fact and law—controls the scope and course of the trial. *See Swift v. State Farm Mut. Auto. Ins. Co.*, 796 F.2d 120, 123 (5th Cir. 1986) (quoting *Flannery v. Carroll*, 676 F.2d 126, 129 (5th Cir. 1982)). Here, failing to identify the "numerosity" requirement until after the Plaintiffs rested, resulted in a waiver of that issue by Defendants.

In support of their position, Defendants cite several cases that were decided at the summary judgment or motion to dismiss stage where defendants challenged plaintiffs' claims for failing to meet the numerosity requirement. *See Myers v. Miss. Off. of Cap. Post-Conviction Couns.*, 720 F. Supp. 2d 773, 777 (S.D. Miss. 2010); *Perry v. Pediatric Inpatient Critical Care Services, P.A.*, Civ. Act. No. SA-18-CV-404-XR, 2020 WL 1248263, *21 (W.D. Tex. Mar. 16, 2020); *Muhammad v. Dallas Cnty. Cmty. Supervision & Corr. Dep't*, 479 F.3d 377, 383 (5th Cir. 2007) (reversing and remanding to make more factual findings district court's grant of defendant's 12(b)(6) motion to dismiss for failure to prove numerosity requirement). Unlike these cases cited by Defendants, where the employers raised the numerosity requirement at the summary judgment or motion to dismiss stage, here, Defendants waited until after the pretrial order was entered and after the Plaintiffs rested their case.

Defendants also cite *Faulker v. Woods Transp., Inc.*, 174 F. App'x 525, 528 (11th Cir. 2006), where the Eleventh Circuit affirmed the district court's grant of judgment as a matter of law in favor of the employer at trial. In this unpublished opinion, the court noted that to survive a Rule 50 motion, the plaintiff "needed to present at trial legally sufficient evidence from which a

reasonable jury could find that [the employer] had at least 15 employees during the statutory time."
*Id*. In affirming the district court, the Eleventh Circuit found that the employee did not identify "any evidence" to show the number of employees. *Id*. This case did not address waiver of the numerosity requirement or the omission of a contested issue of fact or law in the pretrial order, distinguishing *Faulkner*, since both are at issue here. Additionally, the Court has found sufficient evidence presented by the Plaintiffs on the numerosity requirement—at least as to the number of employees. Regardless, the Court finds that Defendants waived the entire numerosity argument—including as to the length of time worked by employees.

The law disfavors trial by ambush at the Rule 50 stage. For instance, in *Int'l Meat Traders, Inc. v. H & M Food Sys.*, 70 F.3d 836, 840 (5th Cir. 1995), the Fifth Circuit found that a defense based on the real party in interest had been waived because it was raised for the first time in a judgment as a matter of law motion at the close of evidence. The court stated: "Raising this defense for the first time on a motion for judgment as a matter of law, at the close of all evidence, offends the Rule where it is not to be used as a trial-by-ambush tactic." *Id*. at 840.

The numerosity issue can be waived by a defendant. *See Fort Bend*, 139 S. Ct. at 1848; *Thomas v. Ala. Home Const.*, 271 F. App'x 865, 867-68 (11th Cir. 2008). The only question is when. Based on the decision to not include the issue as a contested issue of fact or law in the pretrial order, the Court finds that Defendants waived this argument.

**b. Severance of Plaintiffs**

Defendants next argue that they are entitled to judgment as a matter of law because the Court did not sever the Plaintiffs. Defendants re-state the law and arguments set forth in their Memorandum in Support of Defendants' Motion to Sever. [274] at 2-7. The Court denies

Defendants' Motion for Judgment as a Matter of Law on this ground for similar reasons set forth in its Order [279] denying the Motion to Sever and in the transcript from that hearing.

The Plaintiffs' claims were properly joined under Rule 20(a)(1)(a) because their requests for relief arise out of the same series of transactions or occurrences, and there were questions of law and fact in this case that are common to all Plaintiffs. All four Plaintiffs alleged claims against Defendant Total Foot Care for sexual harassment and hostile work environment. This theory of liability encompasses common issues of law, requiring each plaintiff to prove similar facts.  And the Supreme Court has held that "joinder of claims, parties, and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

The convenience and economy of trying Plaintiffs' claims together outweighed any potential prejudice to the Defendant. "Whether to conduct separate trials under the Rule is a matter left to the sound discretion of the trial court on the basis of circumstances of the litigation before it." *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 773–74 (5th Cir. 2009); *see also Applewhite v. Reichhold Chem., Inc.*, 67 F.3d 571, 574 (5th Cir. 1995) (explaining that a district court's discretion to sever an action under Rule 20 or Rule 42 "should be exercised after an examination of the individual case.").

In *Alaniz*, the Fifth Circuit upheld the district court's denial of a motion for separate trials under very similar circumstances. That case involved four former female employees of Dr. Zamora—who owned and operated two clinics—who brought Title VII actions for sexual harassment and retaliation. *Alaniz*, 591 F.3d at 767-70. The Fifth Circuit acknowledged the potential for jury confusion but concluded the possibility was outweighed by "considerations of judicial economy and that Zamora suffered no real prejudice given the similarities between the

cases involved." *Id.* at 774. The Fifth Circuit noted: "All of the [] claims center on allegations of continuous sex discrimination involving the same *modus operandi*. Further, [the] claims are based on a similar series of transactions that were committed by the same defendant over a relatively short time span. Accordingly, each Appellee's claim and evidence presented was relevant to the others' allegation, while prejudice to the defendant, if any, was minimal." *Id.*

In deciding *Alaniz*, the Fifth Circuit relied on the Eleventh Circuit case of *Alexander v. Fulton Cty, Ga.* where eighteen plaintiffs sued the same employer for race-based discrimination. *Alaniz*, 591 F.3d at 774, n.30. The *Alexander* court was not persuaded by the defendant's argument that "there was no way to try together the individual claims of the eighteen Plaintiffs, each involving different work histories, employment decisions and prayers for relief, without unfairly prejudicing their defense and confusing the jury." *Alexander*, 207 F.3d at 1325. The Eleventh Circuit "acknowledge[d] the real potential for confusion among jurors and for unfair prejudice to a defendant where there are large numbers of Plaintiffs, claims, and defenses," but it "conclude[d] that in this case the potential for prejudice was minimized because of the core similarities in Plaintiffs' claims." *Id.*

Like the four employees in the *Alaniz* case, here the Plaintiffs' claims were based on a similar series of transactions by the same individual (Dr. Zaleski) over a similar time span. Dr. Zaleski was the owner of Total Foot Care. Since the events involved four Plaintiffs who all worked for the same defendant over relatively the same time period, separate trials would have been extraordinarily inefficient, and there were instances, where a plaintiff testified concerning things they witnessed with regard to another plaintiff. For example, Plaintiff Young testified that she witnessed Dr. Zaleski hug and kiss Plaintiff Tate. And Plaintiff Landing testified that she saw Dr.

Zaleski inappropriately hug Angela Tate and Darshaun Young. While these are simply a couple of examples, the Court finds that each Plaintiff's claims and evidence presented was relevant to the others' allegations. The prejudice to the defendant was minimal, if any. *See Alaniz*, 591 F.3d. at 774. *See also Jones v. Wal-Mart Stores, Inc.,* Civ. Act. No. 1:05-cv-121, 2006 WL 8441384, *2 (E.D. Tex. Feb. 6, 2006) (denying motion for separate trials where two plaintiffs alleged that the former store manager engaged in inappropriate sexual conduct towards them on different occasions and holding that "[w]hile Plaintiffs' claims arise from separate, discrete incidents, [Defendant's] allegedly inappropriate sexual conduct toward his subordinates, if true, forms part of a logically related series of transactions or occurrences under Rule 20").

The Court further finds that holding four separate trials would have wasted judicial resources and unduly burdened the parties. While the Defendants claim that the joint trial of four Plaintiffs confused the jury, the Court disagrees. As evidenced by the jury's verdict, there was no confusion on the part of the jury. Based on the evidence, the jury returned verdicts in favor of three of the Plaintiffs, in varying amounts. And the jury rejected future emotional distress damages and punitive damages for each of those three Plaintiffs. [295] at 2; [297] at 2; [301] at 2. In fact, the three verdicts were below the statutory cap of $50,000 applicable to each Plaintiff. 42 U.S.C. 1981a(b)(3)(A).  Also, based on the evidence, the jury returned a defense verdict as to the claims of Plaintiff Hope Landing. [299] at 1. *See Fulton County*, 207 F.3d at 1326 (finding that a mixed verdict by the jury finding in favor of some plaintiffs and denying relief to others showed that jury considered evidence and testimony and was not confused by joint trial of eighteen plaintiffs and noting that the jury's verdict suggests that the jury discerned the strengths and weaknesses of the claims of each of the eighteen plaintiffs where jury found for some plaintiffs and against others).

Defendants also claim that four separate trials would not have unduly burdened the court system because each trial would have only taken two days. This argument is unrealistic and not supported by the record. The trial took five full days, with the case not getting to the jury until late in the afternoon on the fifth day. Conferences with counsel, jury selection, and opening statements took most of the first day. After three days of witness testimony and presentation of numerous exhibits, the defense rested at the end of the fourth day. The fourth day also consisted of the Rule 50 arguments from counsel. On the fifth and final day, the Court ruled on pending motions, held the jury instruction conference with counsel, gave the jury their instructions, and the parties presented closing arguments. The jury retired late in the afternoon, and returned a verdict shortly after 7:00 p.m. Defendants' position that all of this could be reduced to two day trials for each Plaintiff is not practical. This is particularly true since the evidence at trial indicated each Plaintiff could provide testimony at every trial if there were four separate trials.

The Court's decision to refrain from holding four separate jury trials—taking close to a month of the Court's calendar and unnecessarily expending resources—was in the interests of judicial economy. It should also be noted that the case was tried when the Omicron variant of COVID-19 was spreading in Mississippi, three jurors were excused for COVID-19 exposure (leaving the minimum of six jurors to hear the case), the trial was previously continued on more than one occasion, and one of Plaintiffs' witnesses passed away before the trial. The economy of trying Plaintiffs' claims together simply outweighed any potential prejudice to the Defendant. *See Alaniz*, 591 F.3d at 744; *Alexander v. Fulton Cty., Ga.*, 207 F.3d 1303, 1325–26 (11th Cir. 2000), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003).

The Court finds that the Defendants' second ground for judgment as a matter of law—that the Court should have severed the Plaintiffs and held four separate trials—fails.

### c. *Mistrial*

Defendants' final argument that they are entitled to judgment as a matter of law is based on their position that the Court should have granted Defendants a mistrial after Plaintiffs' opening statement. During her opening statement, Plaintiffs' counsel referred to Dr. Zaleski's licensing status and also stated that "other women" had called Plaintiffs' counsel.

At the outset, the Court notes that "a mistrial is an extreme remedy, [that] should be 'used with the greatest caution, under urgent circumstances, and for very plain and obvious cases.'" *United States v. Reed*, 762 F. App'x 173, 174 (5th Cir. 2019) (quoting *United States v. Ebron*, 683 F.3d 105, 128 (5th Cir. 2012)). As is explained below, there was sufficient evidence to support the jury's verdict, and any prejudice to the Defendants with regard to these two statements was minimized by the Court's instructions to the jury—which were given on multiple occasions—that statements and arguments of counsel are not evidence. A mistrial was not warranted in this case, and Defendants' argument to the contrary fails.

### (1) "Other Women" Comment

As to Plaintiffs' counsel's reference to "other women" calling her, the Court notes that Defense counsel objected to the statement, but did not move for a mistrial based on that statement. And even if Plaintiffs' counsel's reference to "other women" in her opening statement was improper, Defendants have not shown prejudice as any prejudice was minimized by the Court's instructions. *See United States v. Bennett*, 874 F.3d 236, 248-49 (5th Cir. 1994) (finding no error where potentially prejudicial statements were made during opening statements and the court

16

rendered any prejudice harmless by instructing the jury at the start of trial and during opening statements that attorney statements are not evidence). First, after the "other women" statement was made, the Court warned Plaintiffs' counsel to stay within the confines of what the evidence would show for her opening statements. In addition, the Court gave preliminary instructions to the jury that questions, statements, arguments, and objections by counsel are not evidence. Finally, the Court included a written jury instruction for the jury to use during deliberations, again explaining that statements and arguments of counsel are not evidence.

Juries are presumed to follow a court's instructions, *United States v. McCarty*, 36 F.3d 1349, 1355 (5th Cir. 1994), and there was no indication here that the jury did not follow any of the Court's instructions—specifically, the instructions that statements and arguments of counsel are not evidence. To the contrary, the jury's verdict was supported by the evidence, indicating that the jury heeded the Court's instructions to disregard arguments and statements of counsel. In fact, the jury found in favor of Defendant Total Foot Care as to Plaintiff Hope Landing's claims ([299] at 1) and rejected any claims for future emotional distress and punitive damages for the other three Plaintiffs. [295] at 2; [297] at 2; [301] at 2. And as to the Plaintiffs who prevailed, the jury returned verdicts in different amounts, based on the evidence. *Id.*

There is simply no evidence that Defendants were prejudiced by Plaintiffs' counsel's singular reference to "other women" calling her in her opening statement. And any prejudice was cured by the multiple instructions given by the Court that arguments and statements of counsel are not evidence. Defendants' motion is denied on this ground.

(2) **Dr. Zaleski's licensing status**

At the close of opening statements, Defense counsel moved for a mistrial based on Plaintiffs' counsel's reference to Dr. Zaleski's licensing status. The parties had previously entered a stipulation presented to the jury that "Dr. Zaleski is no longer a practicing podiatrist." But in her opening statement, Plaintiffs' counsel twice made reference to Dr. Zaleski not being licensed to practice medicine. In response, the Court gave the jury two separate limiting instructions to only consider the stipulation that was agreed upon by the parties "that Dr. Zaleski is no longer a practicing podiatrist." Furthermore, the Court observed the demeanor of the jurors, including their responses and body language, and it was clear to the Court that they understood the Court's instructions. In addition to the limiting instructions, the Court's charge to the jury included the general instruction that any statements, objections, or arguments made by the lawyers are not evidence. This instruction was included as a preliminary instruction once the jury was sworn in and was given again during the jury charge before deliberations began. All of these instructions minimized any potential prejudice to Dr. Zaleski from this statement. *See Bagheri v. Bailey*, 713 F. App'x 141, 149-50 (4th Cir. 2017) (finding that a curative instruction to completely disregard evidence of defendant physician's licensing status given by the district court was a sufficient measure to mitigate the possibility that a jury would be influenced by evidence and the district court was in the best position to assess the impact of the evidence on the jury); *Bennett*, 874 F.3d at 248-49.

The Fifth Circuit recognizes the well-established presumption that jurors heed the district court's instructions. *United States v. Anderson*, 755 F.3d 782, 798 (5th Cir. 2014) (citing *United States v. Skelton*, 514 F.3d 433, 446 (5th Cir. 2008). This is true even in cases where a cautionary

instruction was not given or requested. *See Anderson*, 755 F.3d at 798 (finding the court's instruction to the jury to disregard the prosecutor's improper comment during closing argument and the court's general instruction that attorney arguments are not evidence was "likely sufficient to cure any prejudice resulting from the improper prosecutorial comment"). "Declaring mistrial is a last resort, only to be implemented if the taint [from improper information] is likely to prove beyond realistic hope of repair." *United States v. Sepulveda*, 15 F.3d 1161, 1184 (1st Cir. 1995).

Again, there is no indication that the jury did not heed the Court's multiple instructions that the arguments of counsel are not evidence. Here, the Court gave two limiting instructions in the moment to only consider the stipulation, gave a preliminary instruction, and gave a charge to the jury before deliberations on what constitutes evidence.

The Defendants were not prejudiced by the reference to Dr. Zaleski's lack of a medical license during opening statements. Any potential prejudice was minimized by the numerous instructions to the jury. Moreover, there was sufficient evidence to support the jury's verdict. Defendants' motion is denied on this ground.

### III.   MOTION FOR A NEW TRIAL

Defendants also ask this Court, alternatively, to view their request as a motion for a new trial based on the same grounds. "The decision to grant or deny a motion for new trial is a matter for the trial court's discretion; [the Fifth Circuit] will reverse its ruling only for an abuse of that discretion." *Seibert v. Jackson Cnty., Miss.*, 851 F.3d 430, 438 (5th Cir. 2017) (quoting *Treadway v. Societe Anonyme Louis-Dreyfus*, 894 F.2d 161, 164 (5th Cir. 1990)).

"A trial court should not grant a new trial on evidentiary grounds unless the verdict is against the great weight of the evidence." *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998)

(quoting *Dotson v. Clark Equip. Co.*, 805 F.2d 1225, 1227 (5th Cir. 1986)). In other words, the movant must show "an absolute absence of evidence to support the jury's verdict." *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 269 (5th Cir. 1998).

For the reasons previously set forth, the Motion for New Trial is denied. Also, to the extent Defendants suggest that there was insufficient evidence to support the jury's verdict, the motion is denied on that ground as well. This was a classic jury case. It was a proper case to submit the relevant evidence to the jury and let the jury make determinations of credibility and fact. It is apparent to the Court, as evidenced by the special verdicts, that certain critical issues of credibility and fact were determined by the jury against all Plaintiffs, as the jury did not find in favor of the Plaintiffs for future emotional distress and punitive damages and found in favor of Defendant Total Foot Care on Plaintiff Hope Landing's claims. In the opinion of the Court, there was sufficient evidence to support the verdicts of the jury. Below is just some of the testimonial evidence presented by Plaintiffs at trial.

Plaintiff Angela Tate testified that "Dr. Zaleski hugged us a lot," and he bullied and berated female employees and made life a living hell if someone did not do as he wished. Plaintiff Tate demonstrated the type of unwanted hug Dr. Zaleski gave to female employees. In doing so, she testified that her breasts touched Dr. Zaleski's breasts tightly, and that their bodies were pressed up against each other. Sometimes, Dr. Zaleski would kiss her on the forehead during hugs. Dr. Zaleski also called his female employees "babes," and told Plaintiff Tate he would marry her if he was not planning on getting married or otherwise had a girlfriend. Dr. Zaleski had her "pop" his back, and he called her a "plumber" when she bent over and told her she needed to pull up her pants. Plaintiff Tate told other co-workers about these behaviors. Finally, Plaintiff Tate testified

20

that she is stressed and worried, has anxiety, has trouble sleeping and focusing, that she cannot think clearly, and has suffered mentally.

Plaintiff Darshaun Young, the next witness to testify, stated that there was a "daily" hostile work environment, her body was touched violently without consent by Dr. Zaleski, and that she feared him. When he hugged her, their breasts were touching, and he would kiss her forehead. In addition, Plaintiff Young gave a specific example of her left breast being touched by Dr. Zaleski underneath her shirt and her shirt being pulled down by him. On another day, Dr. Zaleski unexpectedly took her wig off of her, and then she had to take a picture with Dr. Zaleski while the wig was on his head. This wig was firmly clamped to Plaintiff Young's head before he removed it abruptly. She was also kissed by him on multiple occasions, and she was hugged by Dr. Zaleski "pretty much" every time she worked with him. On another occasion, she was alone in a closet with Dr. Zaleski, and there was a separate instance in the parking lot when Dr. Zaleski stated, "You better back up because I am sexually vulnerable right now." Dr. Zaleski admitted that he hugged and kissed her, and that he may have called her a "super fly."

Plaintiff Young further testified that she witnessed Dr. Zaleski hug and kiss Plaintiff Tate. And while Plaintiff Young complained to the officer manager, Stephanie Shepperd, nothing was ever done about Dr. Zaleski's behavior. In Plaintiff Young's EEOC complaint, which was submitted into evidence, she stated that she felt like Dr. Zaleski was going to rape her, and he asked her for sexual favors. Finally, Plaintiff Young testified that she went to the emergency room on two different occasions related to Dr. Zaleski's actions. Plaintiff Young testified that she has had palpitations, chest pain and anxiety, racing thoughts, paranoia, trouble sleeping, lives in fear, and has daily thoughts of Dr. Zaleski.

Plaintiff Hope Landing, the next witness, testified that Dr. Zaleski was angry all the time, and he "spoke to us" in a loud and yelling manner. Dr. Zaleski humiliated and embarrassed her in front of others and told her that she could never do anything correctly. She received unwanted bear hugs from Dr. Zaleski, and she told Stephanie Shepperd, the officer manager, about them. Plaintiff Landing also saw Dr. Zaleski give hugs to Angela Tate and Darshaun Young. Additionally, Dr. Zaleski knew she had anxiety and took advantage of that. She lived in fear of Dr. Zaleski, and he was unpredictable. He once threw a biohazard trash can in the hallway, telling her to clean the mess caused in the hallway as a result, and reprimanding her for throwing the wrong item in the trash can. He would also throw charts at "them." She was always on edge around Dr. Zaleski, and she could not take the anxiety or stress. Dr. Zaleski could turn up a person's anxiety to the "millionth" power. She felt in constant fear of her safety, and Dr. Zaleski degraded and mocked her for having anxiety—describing her time at Total Foot Care as the worst experience she has had in her eleven years of working in the healthcare industry.

Plaintiff Dena Myers, the final witness offered by the Plaintiffs, testified that she was afraid of Dr. Zaleski, he cursed at her multiple times, and used vulgar language towards her. When she declined Dr. Zaleski's invitation to go out for drinks, Dr. Zaleski kicked over a rack of medical charts and told her to pick them up. He called her a "stingy whore" on one occasion when she did not share a piece of candy with him. On another occasion, Dr. Zaleski asked Plaintiff Myers, "How does my dick-tate?" Plaintiff Myers took this comment to mean that it was a sexual comment, since she was not dictating anything at the time. She further testified that she felt embarrassed and degraded, and that Dr. Zaleski always told her to "get the f*** out of my office." Dr. Zaleski would lift her up by her fists, and he would bear hug her from the front and behind without her consent.

When he bear hugged her from behind, Plaintiff Myers testified that he touched her breasts, and she could feel his penis touch her behind. With regard to the hugs from the front, Plaintiff Myers testified that these occurred multiple times. On one occasion, Plaintiff Myers tried to initiate a side hug, but Dr. Zaleski turned her to the front. Additionally, with regard to the hugs, Dr. Zaleski would grab her "suddenly." He also grabbed her stomach, and Dr. Zaleski would tell her if her stomach was flat or tight. Finally, Dr. Zaleski would move his breasts, or the muscles around his breasts, and then ask Plaintiff Myers if she could move her breasts in a similar fashion.

In sum, the Court finds that there was sufficient evidence to support the jury's verdicts—well above the "absence of evidence" threshold set forth in *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 269 (5th Cir. 1998). The verdicts were not the result of bias, prejudice, or any other influence outside the evidence and were not contrary to the law, as given by the Court's instructions. After a careful review of this matter, the Court is not left with the firm conviction that the verdicts are against the great weight of the evidence.

Defendants do not set forth any additional arguments in support of their Motion for a New Trial. In fact, this alternate motion is only mentioned twice—in the caption and in their opening paragraph. [309] at 1.

Defendants' Motion for New Trial is denied.

## IV.   MOTION TO ALTER OR AMEND JUDGMENT

Finally, Defendants ask the Court, alternatively, to alter or amend the judgment.  Again, Defendants only make this request in the caption and in the opening paragraph of their motion. Defendants offer no arguments in support of any basis for altering or amending the judgment other than those set forth in support of their Motion for Judgment as a Matter of Law. As was described

in detail above, Defendants' arguments are unpersuasive. The Motion to Alter or Amend Judgment is denied.

## V.    CONCLUSION

IT IS THEREFORE, ORDERED AND ADJUDGED that Defendants' Motion [303] for Judgment Notwithstanding the Verdict, or, In the Alternative, to Alter or Amend the Judgment, or, in the Alternative, for a New Trial is DENIED.

THIS, the 17th day of February, 2022.

TAYLOR B. McNEEL
UNITED STATES DISTRICT JUDGE